IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARIE DURAN, and
ISAAC GRANADO

     Plaintiffs,

                                                **Case No: _____**

vs.

XAVIER ANAYA,
CHRISTOPHER RIDER, AND
THE CITY OF ARTESIA,

     Defendants.

## **COMPLAINT**

     Plaintiffs, Marie Duran ("Duran") and Isaac Granado ("Granado"), by and through undersigned counsel, bring this complaint for damages and in support thereof state the following:

### **PARTIES, JURISDICTION AND VENUE**

1.     Marie Duran is a resident of Eddy County, New Mexico.

2.     Isaac Granado is a resident of Eddy County, New Mexico.

3.     Defendant Xavier Anaya ( "Anaya") is a law enforcement officer employed by the Artesia Police Department. On information and belief he is a resident of Eddy County.

4.     Defendant Christopher Rider ("Rider") is a law enforcement officer employed by the Artesia Police Department. On information and belief he is a resident of Eddy County.

5.     Defendant City of Artesia (hereinafter referred to as "Artesia" or "The City")  is a municipality located in Eddy County, New Mexico.

6.     This Court has jurisdiction because suit is brought against Defendants under the New Mexico Tort Claims Act, New Mexico Civil Rights Act, and for violations of Plaintiffs Civil Rights under 42 USC § 1983.

7.      Venue is proper in this court as all the acts and omissions that form the basis of this complaint occurred in the State of New Mexico.

8.      A notice of tort claim and notice of claim for violations under the New Mexico Civil Rights Act was timely provided to the City of Artesia and the Artesia Police Department on October 30, 2023.

## STATEMENT OF FACTS

### The Unlawful Entry and Excessive Use of Force

9.      On August 7th of 2023, Anaya was dispatched to the Abo Apartments in Artesia, New Mexico. He was sent there because someone complained about a man and woman in Defendant's apartment yelling at each other.

10.      When he arrived, everything Anaya knew about the incident came from the radio and the Computer-Aided Dispatch ("CAD") system.

11.      There was no mention of a physical altercation—to the contrary, a CAD entry stated that it was "unknown" whether anything other than a verbal argument was in progress.

12.      As soon as Anaya reached the apartment, he notified dispatch that he was "going to kick the door" because he claimed he could hear a woman "screaming."

13.      He did not knock or announce and did not have a warrant.

14.      He also did not hear any sounds that indicated a fight was in progress.

15.      Anaya admitted in a pre-trial interview in Granado's criminal case (D-503-CR-2023-00301) that the sounds of a woman yelling had stopped while the door was still closed.

16.      After kicking the door open, Anaya was confronted by Duran, who did not understand why Anaya was there:



17.     Anaya admitted in his pretrial interview in D-503-CR-202300301 that once the door opened, he saw no evidence that Ms. Duran (or anyone else) had been harmed or was in danger.

18.     After observing that no one was harmed or in danger of being harmed Anya yelled, "where's he at?!" Anaya then pushed past Ms. Duran and stormed into the apartment.

19.     Rider and Huerta followed Anaya into the apartment moments after Anaya kicked the door in.

20.     Once inside, Anaya, Huerta and Rider cornered Granado in a hallway. Rider tased Granado twice for no reason.

21.     Rider grabbed Duran and physically restrained her.

22.     Granado yelled, "Don't touch my girl! She's pregnant!"

23.     Granado was not a threat to officers when he was detained.

24.     Granado was not a threat to officers when he was tased.

25.     Duran, who was standing in the doorway of a bedroom, yelled at Anaya, Rider and Huerta to not tase Granado.

3

26.     Anaya then shoved Duran in the stomach, causing her to fall backwards and double over in pain, clutching her abdomen:

 

27.     Anaya admitted in a pre-trial interview that he knew that Duran was pregnant before he shoved her.

28.     Duran began bleeding heavily.  She was advised by a hospital on August 8, 2023 that she was having a miscarriage.

29.     Tragically, Duran miscarried.

30.     Duran was not taken into formal custody of law enforcement on August 7, 2023. When Rider, Huerta and Anaya left the apartment they left Duran inside of the apartment.

31.     After Granado was tased, he was arrested and placed in the back of Anaya's patrol unit.

32.     Anaya began driving to the city jail to book Granado.

33.     Anaya's unit had the front of the vehicle separated from the back with a metal cage. The back doors were locked and unable to be opened.

34.     As he as was driving, Anaya told Defendant that he was about to be "tased again[.]" Anaya then pulled over and walked to the rear passenger side door with his taser drawn.

35.     In his pretrial interview, Anaya conceded that Granado did not pose a threat to anyone at the time he had stopped his unit and opened the passenger door to tase Granado.

36.     Once Anaya opened the door, Granado—not wishing to get "tased again"—pushed passed Anaya and ran away.

37.     No police officers were injured. In fact, the only people hurt on August 7, 2023 were Granado (who was tased), Duran (who was shoved in the stomach), and their unborn child (who was killed). All those injuries were caused by Anaya and the two officers who followed his lead. There was no evidence—or even allegation—that Granado or Duran committed any crime prior to Anaya's arrival.

<u>**Malicious Abuse of Process as to Ganado**</u>

38.     On August 7, 2023, Anaya filed a criminal complaint and probable cause affidavit that charged Granado with two counts of Resisting, Evading, or Obstructing an Officer, and one count each of Battery on a Peace Officer and Escape from the Custody of a Peace Officer.

39.     Granado was jailed for two. He was released when he was able to post a bond.

40.     The waiver of preliminary hearing was not an admission of guilt or an admission that probable cause existed to charge Granado with any crime.

41.     Granado was arraigned on September 11, 2023 and placed on conditions of release that restrained his liberty.

42.     on December 8, 2023, Granado filed a motion to suppress all evidence the State of New Mexico would introduce at a trial. The motion argued that Anaya had unlawfully entered Granado's residence without probable cause or exigent circumstances and contained extensive citation to Anaya's pre-trial interview as well as lapel videos of the incident.

43.     The Fifth Judicial District Attorney's Office dismissed Granado's case the night before the motion to suppress was scheduled to be heard. The notice of dismissal stated that the case was dismissed, "as it is in the best interest of justice".

<u>**Malicious Abuse of Process as to Duran**</u>

44.     Duran was not arrested by or charged with any crime on August 7, 2023

45.     On August 9, 2024, Anaya filed a criminal complaint in magistrate court charging Duran with battery on a household member and resisting evading or obstructing an officer.

46.     Anaya also filed an affidavit for an arrest warrant, even though a summons is typically requested in similar cases.

47.     Duran was not a danger to the community or any specific person in the community and there was no indication that she would have intentionally failed to comply with a summons. Requesting an arrest warrant was senseless and malicious.

48.     Duran was arrested on August 29, 2023, was jailed, and was released later that day on her own recognizance.

49.     Ms. Duran was put on conditions of release that restrained her liberty.

50.     On December 4, 2023 the Fifth Judicial District Attorney's Office dismissed Duran's case. The notice of dismissal stated that the case was dismissed, "as it is in the best interest of justice".

51.     Instead of protecting Ms. Duran, Anaya shoved Ms. Duran in the stomach, caused her to miscarry, and then caused her to be criminally charged, arrested, and jailed.

### Defendant Rider's Past Misuse of Tasers

52.     Rider has been sued for excessive force by use of a taser on two separate occasions.

53.     In 2013 Rider tased an individual named Mauel Ysasi without justification. A jury in federal court in the District of New Mexico found that Rider had violated Ysasi's right to be free from excessive force and awarded punitive damages against Rider.

54.     In 2014 Rider tased an individual named Patrick Smith without justification after Rider had made an unlawful entry into a residence.

55.     The City of Artesia should not have hired Defendant Rider in the first instance because of his known proclivity for the use of excessive force with tasers.

56.     The City of Artesia should have made certain that Defendant Rider was trained in the appropriate use of tasers.

### COUNT I

6

## VIOLATIONS OF ARTICLE 2, § 10 AND ARTICLE 2, § 4 OF THE NEW MEXICAN CONSTITUTION

### Brought by Duran against the City of Artesia

57.     Plaintiffs incorporate all foregoing paragraphs as if fully stated here.

58.     The New Mexico Civil Rights Act creates a private cause of action against public bodies to redress the violation of a person's civil rights by government actors employed by a public body or a person acting on behalf of a public body under color of law.

59.     At the time of the incident, Anaya and the other officers were wearing full Artesia Police Department uniforms and badges of office.

60.     Anaya and the other officers went to Duran's home in furtherance as part of their official duties.

61.     Anaya and the other officers were acting under color of law at all relevant times.

62.     Article 2, § 10 of the New Mexican Constitution states, "The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or things to be seized, nor without a written showing of probable cause, supported by oath or affirmation."

63.     Anaya violated Duran's right to be secure in her home and free from unreasonable search and seizure when he kicked her door in and entered her home without a warrant, without probable cause, and without exigent circumstance.

64.     Anaya violated Duran's right to be free from unreasonable seizure when he shoved her in the stomach.

65.     Anaya violated Duran's rights when he filed a criminal complaint and obtained an arrest warrants, actions which caused Duran to be booked into jail.

66.     Anaya knew that there was no probable cause that Duran had committed battery on a household member or resisting, evading or obstructing an officer.

67.     Duran was falsely arrested and falsely imprisoned due to the charges filed by Anaya.

68.     The criminal case terminated in Duran's favor when all charges were dismissed.

69.     Anaya's acts caused Duran's prosecution and confinement.

70.     Anaya acted with malice in filing the criminal complaint and arrest warrant for Duran.

71.     Anaya violated Duran's right to "seek and obtain safety and happiness" under Article 2, § 4 of the New Mexican Constitution by invading her home, hitting her, unlawfully ending her unborn child's life, charging her with crimes she did not commit, and having her jailed.

72.     Anaya caused Duran harm, including the infliction of physical pain, emotional distress and the miscarriage of her unborn child.

73.     Duran has suffered injuries including but not limited to pain and suffering, mental anguish, and the loss of enjoyment of life.

74.     The City of Artesia are liable for these harms pursuant to the New Mexico Civil Rights Act, NMSA § 41-4A-3.

## COUNT II

## VIOLATIONS OF ARTICLE 2, § 10 AND ARTICLE 2, § 4 OF THE NEW MEXICAN CONSTITUTION

### Brought by Granado against the City of Artesia

75.     Plaintiffs incorporate all foregoing paragraphs as if fully stated here.

76.     The New Mexico Civil Rights Act creates a private cause of action against public bodies to redress the violation of a person's civil rights by government actors employed by a public body or a person acting on behalf of a public body under color of law.

77.     Anaya and Rider on August 7, 2023, were wearing full Artesia Police Department uniforms and displaying their badges of office.

78.     Anaya and Rider went to Granado's home in furtherance of their official duties.

8

79.     Anaya and Rider were acting under color of law at all relevant times.

80.     Article 2, § 10 of the New Mexican Constitution states, "The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or things to be seized, nor without a written showing of probable cause, supported by oath or affirmation."

81.     Anaya violated Granado's right to be secure in his home and free from unreasonable search and seizure when he kicked his door in and entered his home without a warrant, without probable cause, and without exigent circumstance.

82.     Anaya and Rider violated Granado's right to be free from unreasonable seizure when they physically restrained and detained him.

83.     Rider violated Granado's right to be free from unreasonable seizure each time he tased Granado.

84.     Anaya violated Granado's right to be free from unreasonable seizure when he arrested him without probable cause.

85.     Anaya knew that there was no probable cause that Granado had committed any crimes, yet charged him with escape or attempt to escape from the custody of a peace officer, battery upon a peace officer, and two counts of resisting evading or obstructing an officer.

86.     The criminal case terminated in Granado's favor.

87.     Anaya's acts caused Granado's prosecution and confinement.

88.     Anaya acted with malice in filing the criminal complaint against Granado.

89.     Anaya violated Granado's right to "seek and obtain safety and happiness" under Article 2, § 4 of the New Mexican Constitution by invading his home and unlawfully ending his unborn child's life.

90.     Rider violated Granado's right to "seek and obtain safety and happiness" under Article 2, § 4 of the New Mexican Constitution by tasing him.

9

91.     Anaya and Rider caused Granado harm, including the infliction of physical pain, emotional distress and the miscarriage of his unborn child.

92.     Granado suffered injuries including but not limited to pain and suffering, mental anguish, and the loss of enjoyment of life.

93.     The City of Artesia are liable for these harms caused by Anaya and Rider pursuant to the New Mexico Civil Rights Act, NMSA § 41-4A-3.

## COUNT III

## VIOLATIONS OF DURAN'S 4th AMENDMENT RIGHTS

**Brought by Duran against Anaya (in his individual and official capacity) and the City of Artesia**

94.     Plaintiffs incorporate all foregoing paragraphs as if fully stated here.

95.     Anaya entered Duran's home without a warrant, without probable cause, and without exigent circumstances.

96.     At the time Anaya shoved Duran in the stomach he knew that Duran was pregnant.

97.     Anaya touched Duran with more force than was necessary to effect a lawful seizure.

98.     Anaya's touching of Duran was not privileged or excusable in any way.

99.     Anaya caused Duran harm, including the miscarriage of her unborn child.

100.    Duran has suffered injuries including but not limited to pain and suffering, mental anguish, and the loss of enjoyment of life.

101.    Anaya stated in his pre-trial interview that he did not have probable cause to enter the Plaintiffs' apartment.

102.    Upon information and belief, the City of Artesia has inadequately trained its personnel on when they can and cannot enter a private residence, and this failure was a moving force behind the violations of Duran's 4th Amendment rights.

103.    Upon information and belief, the City of Artesia has inadequately trained its personnel on when they may use force against a bystander while effectuating an arrest, and this failure was a moving force behind the violations of Duran's 4th Amendment rights.

10

104.    Anaya violated Duran's rights when he filed a criminal complaint against Duran and obtained an arrest warrant, actions that caused her to be arrested.

105.    Anaya knew that there was no probable cause that Duran had committed battery on a household member or resisting, evading or obstructing an officer.

106.    The criminal case terminated in Duran's favor when all charges were dismissed in the interest of justice.

107.    Anaya's acts caused Duran's prosecution and confinement.

108.    Anaya acted with malice in filing the criminal complaint and arrest warrant for Duran.

109.    Anaya and the City of Artesia are liable for these harms.

**COUNT IV**

**VIOLATIONS OF GRANADO'S 4th AMENDMENT RIGHTS**

**Brought by Granado against Anaya (in his individual and official capacity), Rider (in his individual and official capacity) and the City of Artesia**

110.    Plaintiffs incorporate all foregoing paragraphs as if fully stated here.

111.    Anaya entered Duran's home without a warrant, without probable cause, and without exigent circumstances.

112.    Anaya seized and arrested Granado after entering Granado's apartment.

113.    Rider used more force than was necessary to effect a lawful seizure of Granado.

114.    Once Granado was restrained in the back of a patrol unit, Anaya knew there was no justification to utilize force against him. Nonetheless, Anaya attempted to tase Granado.

115.    Upon information and belief, the City of Artesia has inadequately trained its personnel on when they can and cannot enter a private residence, and that failure was a moving factor behind the violation of Granado's 4th Amendment rights.

116.    Upon information and belief the City of Artesia has inadequately trained its personnel on when they can and cannot taze people in the course of their duties, and that failure was a moving factor behind the violation of Granado's 4th Amendment rights.

117.    The City of Artesia negligently hired Rider given his publicly known past instances of the use of excessive force with tasers.

118.    Anaya violated Granado's right to be free from unreasonable seizure when he arrested him without probable cause.

119.    Anaya knew that there was no probable cause that Granado had committed any crimes, yet still charged him with escape or attempt to escape from the custody of a peace officer, battery upon a peace officer, and two counts of resisting evading or obstructing an officer.

120.    The criminal case terminated in Granado's favor.

121.    Anaya's acts caused Granado's prosecution and confinement.

122.    Anaya acted with malice in filing a criminal complaint against Granado.

123.    Anaya and the City of Artesia are liable for these harms.

<u>**COUNT V**</u>

<u>**BATTERY, FALSE ARREST, FALSE IMPRISONMENT, ABUSE OF PROCESS AND**</u>
<u>**MALICIOUS PROSECUTION**</u>

**Brought by Duran against Anaya and the City of Artesia**

124.    Plaintiffs incorporate all foregoing paragraphs as if fully stated here.

125.    New Mexico Tort Claims Act, § 41-4-12 waives sovereign immunity for battery, false arrest, false imprisonment, abuse of process and malicious prosecution against a person by a law enforcement officer.

126.    Anaya battered Duran when he shoved her in the stomach.

127.    Anaya touched Duran in a rude, angry or insolent manner.

128.    Anaya's touching of Duran was not privileged or excusable in any way.

129.    Anaya caused Duran harm, including the miscarriage of her unborn child.

130.    Duran has suffered injuries including but not limited to pain and suffering, mental anguish, and the loss of enjoyment of life.

131.    Anaya filed a criminal case against Duran with knowledge that there was no probable cause, resulting in Duran's arrest, jailing, and prosecution.

132.    Anaya and the City of Artesia are liable for these harms.

## COUNT VI

## BATTERY, ASSAULT, FALSE ARREST, FALSE IMPRISIONMENT, ABUSE OF PROCESS AND MALICIOUS PROSECUTION

### Brought by Granado against Anaya, Rider and the City of Artesia

133.    Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

134.    New Mexico Tort Claims Act, § 41-4-12 waives sovereign immunity for battery, false arrest, false imprisonment, abuse of process and malicious prosecution against a person by a law enforcement officer .

135.    Rider battered Granado when he tased him twice.

136.    Rider touched Granado in rude, angry or insolent manner.

137.    Rider's touching of Granado was not privileged or excusable in any way.

138.    Anaya falsely imprisoned Granado when he arrested him.

139.    Anaya placed Granado in fear of receiving an imminent battery when Anaya threatened to taze Granado again and took substantial steps to taze Granado.

140.    Anaya initiated a criminal case against Granado with knowledge that there was no probable cause, resulting in Granado's arrested, jailing, and prosecution.

141.    Rider and Anaya caused Granado harm, including the infliction of pain and suffering upon his person.

142.    Granado has suffered injuries including but not limited to pain and suffering, mental anguish, and the loss of enjoyment of life.

143.    The City of Artesia was negligent in hiring Rider which was a cause in fact of the battery that Rider committed against Granado.

144.    Anaya, Rider and the City of Artesia are liable for these harms.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to enter an order granting Plaintiff the following relief.

13

a.      Enter a Judgment against Defendant finding that they are liable to Plaintiffs;

b.      Award compensatory damages for all of Plaintiffs' claims;

c.      Award punitive damages for Plaintiffs' 1983 claims;

d.      Award the costs and expenses of this case, including attorneys' fees for Plaintiffs'

1983 claims and New Mexico Civil Rights Act claims;

e.      Award pre-judgment and post-judgment interest;

g.      Award all other further and general relief as the Court deems just and proper

**PRAYER FOR RELIEF**

Plaintiffs demand a jury on all issues so triable.


Respectfully submitted,



WALDO GUBERNICK
LAW ADVOCATES LLP

*/s/ Benjamin Gubernick*
Benjamin Gubernick
 New Mexico Bar No. 145006
Ben@wglawllp.com
623-252-6961
717 Texas St., Suite 1200
Houston, TX 77002

-and-

*/s/ Todd J. Bullion*
Todd J. Bullion
Law Office of Todd J. Bullion
4801 Lang Ave NE
Suite 110
Albuquerque, NM 87109
(505) 494-4656
todd@bullionlaw.com